IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| AARON WINSTON, | * |
| Plaintiff, | * |
| v. | Case No.: GJH-19-0026 |
| | * |
| OFFICER ALEX HAZIMINAS #J-603, *et al.*, | |
| | * |
| Defendants. | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Aaron Winston filed a thirteen-count First Amended Complaint against Defendants Detective Alex Haziminas, Mosaic Lounge, LLC, and Brandi Pope, an employee of Mosaic Lounge, alleging a litany of claims including constitutional deprivations, battery, negligence, false arrest and imprisonment, intentional infliction of emotional distress, and malicious prosecution, all arising out of his arrest on the evening of February 20, 2016 at Mosaic Nightclub in Baltimore, Maryland. ECF No. 11. Pending before the Court is Defendant Detective Haziminas' Partial Motion for Summary Judgment, ECF No. 65.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Defendant Det. Haziminas' Partial Motion for Summary Judgment, ECF No. 65, is granted.

---

[1] Also pending before the Court is Defendant Det. Haziminas' Motion for Leave to File Audio Recordings as Exhibit, ECF No. 66, and his Consent Motion for Extension of Time to File Response/Reply, ECF No. 68, which the Court now grants.

1

I. BACKGROUND

A. Factual Background[2]

On the evening of February 20, into the early morning of February 21, 2016, Plaintiff attended a birthday party with friends at the Mosaic Nightclub and Lounge located in the Power Plant Live development in Baltimore, Maryland. ECF No. 11 ¶ 5; ECF No. 67-3 at 5 (Winston Deposition Transcript). At 12:30 a.m., Defendant Det. Haziminas received a call for police assistance at Mosaic regarding a dispute between a male and female patron, and responded with Officer Andre Smith and Detective Michael Dressel. ECF No. 65-2 at 13 (Haziminas Interrogatory Responses). Around this time, Plaintiff witnessed one of his friends speaking with security and, after a few minutes, he saw police enter the club and walk directly to his friend. ECF No. 11 ¶ 6; ECF No. 67-3 at 3, 5.

Upon recognizing one of the police officers from his previous job as a lifeguard in Baltimore City, Plaintiff attempted to approach this officer to inquire about why his friend was asked to leave the club, but before he could do so, Defendant Det. Haziminas grabbed Plaintiff by his shoulder. ECF No. 11 ¶ 8; ECF No. 67-3 at 5. Plaintiff, after explaining that he knew the police officer and that he was trying to alleviate the situation, began walking again when Defendant Det. Haziminas grabbed Plaintiff by the neck and threw, or "throat/choke-slammed" him into the bar. *Id.* After throwing Plaintiff towards the bar, Defendant Det. Haziminas then grabbed him by his arm and twisted Plaintiff's right arm behind his back and stuck his leg out and threw him down onto the ground. ECF No. 11 ¶ 9; ECF No. 67-3 at 5. Afterwards, he placed his knees on Plaintiff's back, which stopped Plaintiff's ability to breathe, and the manager of Mosaic, Brandi Pope, put her knees on the back of Plaintiff's leg, which also prevented him from

---

[2] These facts are either undisputed or viewed in the light most favorable to the Plaintiff as the non-moving party.

moving, and Plaintiff was handcuffed. ECF No. 11 ¶ 10; ECF No. 67-3 at 5. Once Plaintiff was handcuffed by Defendant Det. Haziminas, he grabbed Plaintiff by the same arm that he twisted behind his back and yanked Plaintiff up by this arm, and Plaintiff complained to him that he felt a crack in his arm and that he was in a lot of pain—which Plaintiff says Defendant Det. Haziminas ignored. ECF No. 11 ¶ 11; ECF No. 67-3 at 5.

Det. Haziminas placed a call for backup at 12:58:38 a.m. ECF No. 65-3 (Baltimore Police Department dispatch audio from incident); ECF No. 65-4 (City of Baltimore Computer Aided Dispatch ("CAD" Report).[3]

After Plaintiff was handcuffed and Defendant Det. Haziminas escorted Plaintiff from Mosaic, Det. Haziminas contends that he walked Plaintiff from Power Plant Life to the Central District Station at around 1:02 a.m., and that they arrived at the Central District at around 1:08:36 a.m. ECF No. 65-2 at 14; ECF No. 65-4 at 3. According to Plaintiff, during this walk and once at the Central District, Plaintiff continued to complain to anyone that would listen that he was in pain and that he thought his shoulder was broken. ECF No. 11¶ 12; ECF No. 67-3 at 5, 10, 20. Plaintiff claims that his pleas for help were ignored until another officer came to his assistance and, once he observed Plaintiff's shoulder, he called an ambulance. ECF No. 11 ¶ 12; ECF No. 67-3 at 5.

Upon arriving at the Central District, Defendant Det. Haziminas states that, after searching Plaintiff for weapons and removing his handcuffs, he handcuffed one of Plaintiff's

---

[3] The audio recordings found in ECF No. 65-3 are certified copies of the Baltimore Police Department KGA dispatch audio relevant to the incident at issue. ECF No. 65-4 is a certified copy of the corresponding CAD report. The time stamps cited from the audio recordings refer to the time stamps included in the NICE Inform media player system.

There is a slight discrepancy between the time stamp associated with the call for backup on the KGA audio and the time on the corresponding CAD report. Specifically, the CAD report shows that the call for backup was placed at 12:59:52 a.m., ECF No. 65-4 at 2, while the KGA audio identifies the time of the call to be 12:58:38 a.m., ECF No. 65-3 at 2/21/2016 12:58:38.

hands to a bench. ECF No. 65-2 at 14. Defendant Det. Haziminas contends that, within a few minutes of adjusting Plaintiff's handcuffs, he placed a call for medical assistance for Plaintiff, who was complaining of pain in his right arm. *Id.* The audio-recording establishes the time of the call to be 1:06 a.m., which is around the time of their arrival at Central District. *Compare* ECF No. 65-3 at 2/21/2016 1:06:40 a.m. *with* ECF No. 65-4 at 2 (CAD report showing location change to "on scene" at the Central District at 1:08:36 a.m.).

Bridget Richards, one of the Baltimore City paramedics who responded to the call for medical assistance, testified at deposition that Baltimore City 911 received a call for medical assistance at 1:08 a.m., dispatch was notified at 1:09 a.m., and that by 1:10a.m., paramedics were in route to the Central District. ECF No. 65-5 at 5–6. Paramedics arrived at the Central District at 1:15 a.m., *id.* at 6, and at 1:18 a.m., the paramedics made initial contact with Plaintiff. *Id.* at 7, 9. At 1:20 a.m., the paramedics slinged and swathed Plaintiff's arm to splint the injury, *id.* at 11, 16–17. Sometime before 1:48 a.m., Plaintiff was moved to the ambulance, where his vitals were taken. *Id.* at 17. Paramedics left the Central District with Plaintiff at 1:50 a.m. and transported him to the University of Maryland Hospital in Midtown. *Id.* at 7. Richards also testified that they determined that Plaintiff was "not a priority one patient" such that they "downgraded the patient mode" because he was "stable," meaning that "it [was] an emergent, but [was] not an emergency." *Id.* at 8.

Plaintiff contends that paramedics arrived almost an hour and a half after the incident. ECF No. 67-3 at 5. After the paramedics arrived, Defendant Det. Haziminas escorted Plaintiff in the ambulance to Maryland General Hospital, and Plaintiff did not recall any conversation in the ambulance when traveling from the Central District to the hospital. ECF No. 67-3 at 11; ECF No. 11 ¶ 13.

At the hospital, Defendant Det. Haziminas and the other officer who Plaintiff attempted to speak to before the altercation began, Andre Smith, harassed and intimidated Plaintiff while he was in a bed receiving treatment from the nurse. ECF No. 11 ¶ 14; ECF No. 67-3 at 11. Specifically, Plaintiff states that Defendant Det. Haziminas stated that "[Plaintiff] wasn't minding his business" and got "f[*]cked up," and that he said "look at [Plaintiff's] address. He ain't nobody. He lives in the Freddie Gray neighborhood." ECF No. 67-3 at 12. After this, Plaintiff's nurse, Nicolette Kenton, and Defendant Det. Haziminas "got into it verbally" and she asked him to leave. *Id*. According to nurse Kenton, Defendant Det. Haziminas "kept pacing outside of the room" and she explained that "it felt like as [she] was trying to care for [Plaintiff] . . . to get his arm splinted, they kept egging him on." ECF No. 67-4 at 3–4, 6. Nurse Kenton confirmed that Plaintiff's injuries were visible from the naked eye, stating that: "I knew he had a complex fracture without an x-ray. It was very obvious." *Id.* at 5. She also asked the officers whether Plaintiff was under arrest, and once they confirmed that he was not, she requested that the officers leave the room because "[Plaintiff] was injured and he needed to be calm and he needed his family [and] support and help, not harassment." *Id.* at 5–6. Additionally, because Plaintiff was handcuffed while he was in the room with Nurse Kenton, she asked the officers, several times, to take off the handcuffs, before Officer Smith finally removed them. *Id.* at 6.

Regarding the nature of his injury, Plaintiff additionally submits the medical report of his orthopedic expert, Dr. Marc Rankin. *See* ECF No. 67-1 (Rankin Report). In his report, Dr. Rankin stated that, in his professional opinion to a reasonable degree of medical certainty, Plaintiff's "displaced right humerus fracture was the result of a forceful twisting injury to his shoulder." *Id.* at 2. He also stated that Plaintiff "sustained a displaced anatomic neck fracture,

5

with comminution of the posterior cortex, and anteroinferior subluxation," which "in healthy bone suggests the biomechanics involved a violent torquing mechanism." *Id.* at 3.

Plaintiff filed an internal affairs complaint against the officers and, "within days," he was arrested and charged with two counts of second-degree assault, obstructing and hindering, disorderly conduct, two counts of resisting arrest, and failure to obey. ECF No. 11 ¶ 15. On August 16, 2016, all charges were resolved in Plaintiff's favor, *id.* ¶ 17.

**B. Procedural History**

On November 20, 2018, Plaintiff filed a Complaint in the Circuit Court for Baltimore County (Case No. 24-C-18-005950). ECF No. 1 ¶ 1. On January 3, 2019, Defendants Mosaic Lounge and Det. Haziminas filed a Notice of Removal with this Court pursuant to 28 U.S.C. §§ 1441(a), 1331, and 1446. *Id.* ¶¶ 2–3,6. On January 29, 2019, Plaintiff filed an Amended Complaint, ECF No. 11. On February 12, 2019, Defendant Det. Haziminas answered the Complaint, ECF No. 13. On September 21, 2021, Defendant Det. Haziminas filed the now pending Partial Motion for Summary Judgment, ECF No. 65. On October 8, 2021, Plaintiff opposed the Motion, ECF No. 67, and on October 25, 2021, Defendant Det. Haziminas replied, ECF No. 69.

**II.    STANDARD OF REVIEW**

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings, to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citation omitted). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III.   DISCUSSION

In the First Amended Complaint, Plaintiff alleges eight counts against Defendant Det. Haziminas, with each count arising from his arrest of Plaintiff in the early hours of February 21, 2016. Defendant Det. Haziminas seeks summary judgment on (1) Plaintiff's Fourteenth Amendment claim in Count I "because Plaintiff's excessive force claim relates only to alleged excessive force used in the course of his arrest," and (2) Count II in its entirety "because the

undisputed facts cannot demonstrate the deliberate indifference required to maintain a claim for failure to provide medical aid." ECF No. 65-1 at 2. The Court will address each argument separately.

### A. Excessive Force

"Claims for the use of excessive force in effectuating an arrest or other seizure are governed by the Fourth Amendment's prohibition against unreasonable seizures, and claims of post-arrest excessive force against an arrestee or pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, which prohibits before conviction the use of excessive force that amounts to punishment." *Dobbs v. Townsend*, 416 F. Supp. 3d 441, 448 (D. Md. 2019) (citing *Graham v. Connor*, 490 U.S. 386, 394–95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *see also Young v. Prince George's Cnty., Maryland*, 355 F.3d 751, 756 (4th Cir. 2004) (recognizing that *Graham v. Connor* requires excessive force claims in the context of an arrest to be analyzed under the Fourth Amendment).

Here, in Count I, Plaintiff invokes the Fourth and Fourteenth Amendments in asserting that Defendant Det. Haziminas used excessive force against him during his arrest. *See* ECF No. 11 ¶ 20. Specifically, Plaintiff alleges that "Officer Haziminas . . . forcefully and excessively place[d] Plaintiff in handcuffs so tight and handel[ed] Plaintiff's arm so violently that at least one of his arm[s] was sure to break and it did," *id*, and that he "violently grabbed, and 'throat-choke-slammed' [Plaintiff] on the bar and then down to the floor." *Id.* ¶¶ 20, 22. Plaintiff does not allege any facts relating to excessive force outside of the context of his arrest. *See generally id.* ¶¶ 5–26. Under well settled precedent, such allegations, solely in the context of an arrest, clearly invoke the Fourth Amendment, not the Fourteenth Amendment. *See Karn v. PTS of Am., LLC*, No. 16-cv-3261-GJH, 2017 WL 4162251, at *7 (D. Md. Sept. 19, 2017) ("[O]nce the single act

of detaining an individual has been accomplished, the [Fourth] Amendment ceases to apply. Claims regarding the subsequent use of excessive force and conditions of confinement are therefore governed by the Fourteenth Amendment's Due Process Clause." (second alteration in original) (internal citations and quotation marks omitted)). Thus, Plaintiff's Fourteenth Amendment claim in Count I fails as a matter of law and Plaintiff is entitled to summary judgment on this count. *See e.g.*, *Krell v. Queen Anne's Cnty.*, No. 18-cv-637, 2018 WL 6523883, at *7 (D. Md. Dec. 12, 2018) (dismissing Fourteenth Amendment excessive force claim where plaintiff failed to allege facts relating to excessive force outside of context of arrest).

    B. **Medical Care**

Where a pretrial detainee asserts a claim for denial of medical care following his arrest, it is governed by the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's prohibition against cruel and unusual punishment. *See Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). "The constitutional protections afforded to a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided to convicted prisoners by the Eighth Amendment." *Christopher v. Warden Assistant Warden of Baltimore City Det. Ctr.*, No. 13-cv-1057-JFM, 2013 WL 1701464, at *1 (D. Md. Apr. 17, 2013) (citing *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). While the Fourth Circuit has held that the precise scope of a pretrial detainee's Fourteenth Amendment rights is "unclear," a pretrial detainee can make out a violation "at least where 'he shows deliberate indifference to serious medical needs' under cases interpreting the Eighth Amendment." *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). This is "because no legitimate nonpunitive goal is served by a

denial or unreasonable delay in providing medical treatment where the need for such treatment is apparent." *Martin*, 849 F.2d at 871.

"The deliberate-indifference standard has two components. The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017) (citing *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). A "'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)). Here, Defendant Det. Haziminas does not dispute that Plaintiff had a serious medical need. ECF No. 69 at 6. Accordingly, as there is no factual dispute as to the objective, serious medical need of Plaintiff, the Court will focus its analysis on the alleged subjective, deliberate indifference exhibited by Defendant Det. Haziminas.

Deliberate indifference requires "proof of the official's 'actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by [the official's] action or inaction.'" *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (internal citations omitted)). Deliberate indifference requires "more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Heyer*, 849 F.3d at 202 (quoting *Scinto*, 841 F.3d at 225); *see also Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) ("the denial of attention must be both deliberate and without legitimate penological objective."). An official acts with deliberate indifference if he "knows of and disregards an excessive risk to [the

pretrial detainee's] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994).

Deliberate indifference "requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." *Young v. City of Mount Ranier*, 238 F.3d 567, 576 (4th Cir. 2001) (citation omitted). "Put differently, the plaintiff must show that the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . dr[ew] th[at] inference." *Scinto*, 841 F.3d at 225. (internal quotations and citations omitted) (alterations in original). Ultimately, "[d]eliberate indifference is a very high standard . . . the Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson*, 195 F.3d at 695–96.

Defendant Det. Haziminas argues that he is entitled to summary judgment on Count II because, "as a matter of law, [he] was not deliberately indifferent to Plaintiff's medical needs by calling for medical assistance within minutes of Plaintiff's injury." ECF No. 69 at 1. In the First Amended Complaint, Plaintiff contends that, after Defendant Det. Haziminas "was placed on notice that he'd broken Plaintiff's shoulder," he forced Plaintiff to remain handcuffed behind his back and to walk to the police station from Mosaic Nightclub, and that he failed to call for "any medical assistance for an hour and a half." ECF No. 11 ¶ 30. And in his deposition testimony, Plaintiff stated that the ambulance arrived at the Central District "about an hour later," after he was made to walk from Mosaic to the Central District. ECF No. 67-3 at 11, 21.

The evidence does not support this claim, however, and Plaintiff cannot show that Defendant Det. Haziminas disregarded or ignored Plaintiff's serious medical need based on the

11

timeline of events established by the record. *See Young*, 238 F.3d at 576. Viewing the facts in a light most favorable to Plaintiff (1) at the very earliest, Plaintiff's injury and arrest occurred just after 12:30 a.m., when Defendant Det. Haziminas arrived at Mosaic, and (2) the call for medical assistance went out no later than 1:08 a.m. Thus, *at most*, thirty-eight minutes elapsed from the time of injury until the time medical assistance was called.[4] Further, given that paramedics arrived at the Central District at 1:15 a.m. and made initial contact with Plaintiff at 1:18 a.m., a period of forty-eight minutes would have elapsed between Plaintiff's arrest and the intervention of medical assistance for his injury. *See* ECF No. 65-5 at 6–7.

While the Court recognizes that a broken arm causes severe pain and discomfort, neither a 38-minute delay in calling for medical assistance, nor a 48-minute delay before receiving attention from medical professionals, rises to the level of deliberate indifference.[5] This is particularly true, where, as here, the record does not demonstrate that the short delay in treatment exposed Plaintiff to further injury. *See e.g.*, *Burkins v. Pietrogiacomo*, No. 20-cv-3597-SAG, 2022 WL 1155873, at *5 (D. Md. Apr. 18, 2022) (finding that 33-to-58-minute delay between arrest and transport of injured detainee to hospital, where short delay did not in fact expose him to further injury, failed to sustain claim for deliberate indifference); *Singfield v. Smith*, No. 19-cv-2030-GLR, 2021 WL 1087062, at *11 (D. Md. Mar. 19, 2021) (granting summary judgment on deliberate indifference claim where injured prisoner visited a doctor and a registered nurse the day following his injury, "it [was] not clear there was any significant delay in treatment" and "[t]o the extent that treatment was delayed, it is not clear how this resulted in a significant

---

[4] Defendant Det. Haziminas sets the time of arrest and injury at 12:58:38 a.m., when he called for backup, which, if true, would mean less than 10 minutes elapsed before the initial call for medical assistance at 1:08 a.m. ECF No. 65-1 at 8.

[5] The Court notes here, again, that this would be the longest possible time elapsed between the injury and call for assistance, and the injury and intervention of medical professionals, respectively.

12

injury."); *Manzur v. Daney*, No. 14-cv-2268-PWG, 2017 WL 930125, at *5 (D. Md. Mar. 9, 2017) (holding that one-hour-and-fifty-minute delay between plaintiff's injury and initiation of medical treatment, where there was no evidence plaintiff suffered additional harm, insufficient to infer deliberate indifference).[6]

The record also does not support a conclusion that Defendant Det. Haziminas acted with deliberate indifference to Plaintiff's serious medical needs by disregarding a substantial risk of serious injury when, after breaking Plaintiff's arm, he "allowed him to agonize in pain while he tormented him at the station, on the street, and in the hospital," ECF No. 11 ¶ 32. For the reasons already stated, no reasonable juror could find that Defendant Det. Haziminas disregarded a substantial risk of serious injury, or that he "allowed" Plaintiff to agonize in pain, when he called for medical assistance within, no more than, thirty-eight minutes of Plaintiff's injury.

To be sure, Defendant Det. Haziminas' alleged behavior at the hospital while Plaintiff received medical treatment is concerning. In addition to Plaintiff's statements about Defendant Det. Haziminas' behavior at the hospital, *see* ECF No. 67-3 at 12, Nurse Kenton stated that she "remember[ed] him being menacing [and] [s]tanding outside the door," that "intimidation" and "posturing" occurred, and that she "felt like they were intimidating and instigating [Plaintiff]" such that she "felt like as [she] was trying to care for [Plaintiff] . . . to get his arm splinted, they kept egging him on." ECF No. 67-4 at 3–4. Moreover, she explained that she asked both officers to leave his room because she "was trying to get [Plaintiff] calm" as "he wasn't supposed to be

---

[6] Plaintiff has failed to produce any evidence to support his argument that the *delay* in Plaintiff's treatment "caused him to suffer internal [intrascapular] bleeding within shoulder/arm" and a "comminuted" and "complex fracture." *See* ECF No. 67 at 20–21. Plaintiff bases his argument on the deposition testimony of Nurse Kenton, *id.*; ECF No. 67-4 at 3, and Dr. Rankin's report, *see* ECF No. 67-1 at 3, however neither Nurse Kenton's testimony, nor Dr. Rankin's report, causally relates any of Plaintiff's injuries to any purported delay in treatment, *see id.*, or to the use of "excessively tight handcuffing" or "exposure to extremely frigid temperatures," *see* ECF No. 67 at 21.

moving [his arm] at all" due to his "risk for losing nerve sensation," and that "every time something was said to [Plaintiff] and he became emotional, he was at risk for further injury." *Id.* at 5. Additionally, because Plaintiff was handcuffed while in the hospital room, it took multiple requests from Nurse Kenton before they were removed. *Id.* at 6.

Based on these facts, Plaintiff argues that Defendant Det. Haziminas' "harassment and intimidation interfered with [Nurse Kenton's] ability to provide care," ECF No. 67 at 20, however, in Count II of the First Amended Complaint, Plaintiff does not allege a claim for deliberate indifference on this basis. *See* ECF No. 11 ¶¶ 27–32. Therefore, the Court need not address this argument. *See Harris v. Reston Hosp. Ctr.*, LLC, 523 F. App'x 938, 946 (4th Cir. 2013) (holding that district court properly declined to consider legal theory raised for the first time in opposition to summary judgment where the claim amounted to "constructive amendment of the controlling complaint.").[7]

In sum, based on the record, Plaintiff has failed to demonstrate that Defendant Det. Haziminas was deliberately indifferent to his medical need. As such, Defendant Det. Haziminas is also entitled to summary judgment on Count II.[8]

## IV. CONCLUSION

For the foregoing reasons, Defendant Det. Haziminas' Partial Motion for Summary Judgment, ECF No. 65, is granted. A separate Order shall issue.

Date: June 6, 2022

        /s/
GEORGE J. HAZEL
United States District Judge

---

[7] On the merits, the argument would fail because these facts do not establish that the detective's actions involved him disregarding a "substantial" or "excessive" risk of additional harm.

[8] Having found no constitutional violation in Count II, the Court need not address Defendant's defense of qualified immunity. *See* ECF No. 65-1 at 10–11.